UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARTHA BRIGGS WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-542 |
| | ) | (VARLAN/SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 and 23], to which the Plaintiff has responded in opposition, [Doc. 24]. Plaintiff Martha Briggs Walker seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

The Plaintiff filed an application for Supplemental Security Income (SSI) effective September 8, 2006, alleging disability beginning August 26, 2006. [Tr. 127-33]. The agency denied her application initially and on reconsideration. [Tr. 109-10, 113-15]. On July 28, 2008, the Plaintiff appeared and testified at a hearing before the ALJ; a vocational expert also testified. [Tr. 604-28]. On August 15, 2008, the ALJ issued a decision finding that the Plaintiff was not

disabled. [Tr. 26-34].

The Appeals Council granted the Plaintiff's request for review in December 2008, vacated the ALJ's decision, and remanded the case. [Tr. 75-78]. The Appeals Council directed the ALJ to consider whether prior findings relating to disability were binding on the instant decision, to evaluate whether the Plaintiff's work was performed within fifteen years of the adjudication, and to obtain additional vocational expert testimony, if warranted. [Tr. 76].

On May 21, 2009, the ALJ held a second hearing at which the Plaintiff appeared and testified; a vocational expert also testified. [Tr. 645-54]. On November 19, 2009, the ALJ held a third hearing at which Ms. Walker appeared with her attorney. At that hearing, a vocational expert and Ms. Hill, a co-worker/manager at Plaintiff's last place of employment, also testified. [Tr. 629-44]. On January 27, 2010, the ALJ issued a decision finding Ms. Walker not disabled. [Tr. 12-22].

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

I.  **ALJ FINDINGS**

   The ALJ made the following findings:

   1. The claimant has not engaged in substantial gainful activity since September 8, 2006, the application date (20 CFR 416.971 *et seq.*).

   2. The claimant has the following severe impairments: history of bilateral carpal tunnel syndrome; status post bilateral carpal tunnel release surgeries; seizure disorder; arthritis; hypertension; hypothyroidism; increased swelling and neuropathy in bilateral legs and hands; depression; anxiety; and a panic disorder (20 CFR

2

416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is precluded from all climbing of ladders, ropes, or scaffolds; exposure to unprotected heights; and dangerous and moving machinery, including driving a car. She can perform simple, repetitive, non-detailed tasks and should avoid frequent changes in the workplace.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 22, 1960 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 8, 2006, the date the application was filed (20 CFR 416.920(g)).

[Tr. 15-21].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol.

5

Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

6

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.    POSITIONS OF THE PARTIES**

The Plaintiff presents four allegations of error. First, she argues that the ALJ erred in his weighing of the medical evidence in the record. [Doc. 14 at 14-16]. Second, the Plaintiff argues that the ALJ misstated the testimony of the Plaintiff, and the Plaintiff describes the ALJ's characterization of the Plaintiff's daily activities as arbitrary. [Doc. 14 at 17]. Third, the Plaintiff argues that the testimony of the vocational expert in this case does not constitute substantial evidence. [Doc. 14 at 17]. Finally, the Plaintiff argues that the ALJ arbitrarily rejected the testimony of Sherri Hill, the Plaintiff's former co-worker, and Joni Hampton, the Plaintiff's cousin. [Doc. 14 at 18].

The Commissioner responds that the ALJ properly considered and explained his consideration of the medical evidence, including the medical opinions in the record. [Doc. 23 at 12]. The Commissioner argues that the ALJ's credibility finding was supported by substantial evidence, [Doc. 23 at 14], and the vocational expert's testimony provides substantial evidence supporting the ALJ's determination that the Plaintiff could perform other work, [Doc. 23 at 16]. The Commissioner maintains that the ALJ did not arbitrarily reject the testimony of the lay witnesses. [Doc. 23 at 16].

## V. ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

### A. Weighing of the Medical Evidence

The Plaintiff argues that the ALJ erred in both his treatment of the findings and opinions of the Plaintiff's treating physician and the findings and opinions of consulting medical sources.

*1. Plaintiff's Treating Physician*

The Plaintiff argues that Rodney McMillin was the Plaintiff's treating physician for many years. [Doc. 14 at 14]. The Plaintiff argues that the ALJ erred by not discussing the "Medical Assessment of Ability to Do Work-Related Activities (Physical)," (hereinafter "Medical Assessment"), which Dr. McMillin completed October 31, 2008. [Tr. 380-84].[1]

In response, the Commissioner apparently concedes that Dr. McMillin was a treating physician, and argues that "the medical assessment he prepared in October 2008 is devoid of medical support and explanatory medical narrative." [Doc. 23 at 12]. The Commissioner also maintains that Dr. McMillin's individual findings were consistent with sedentary work, despite his indication that the Plaintiff could not perform such work. [Doc. 23 at 12].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate

---

[1] The Plaintiff notes in her Memorandum that the administrative record omitted page 380 of the record. By agreement with the United States Attorney, the Plaintiff has attached a copy of the document that should have appeared at page 380, which is the first page of the Medical Assessment. [Doc. 14-1 at 1]. Based upon the parties' agreement and for ease of reference, the first page of the Medical Assessment will be cited as "[Tr. 380]".

8

weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In the Medical Assessment, Dr. McMillin indicated that the Plaintiff's ability to lift and/or carry was affected by her cervical strain and she was limited to carrying six to eight pounds. [Tr. 380]. He also indicated that she would be limited in her ability to stand and/or walk due to swelling in her feet and pain. [Tr. 381]. He opined she could stand or walk for thirty minutes without interruption.[2] Dr. McMillin also responded that the Plaintiff would have difficulty sitting and could only sit for six hours in an eight hour workday, only three hours without interruption. [Tr. 281]. Dr. McMillin checked boxes to indicate that the Plaintiff should

---

[2] Dr. McMillin also opined about how many hours the Plaintiff could stand in an eight hour workday, but his response is eligible.

9

never climb, balance, crouch, kneel, or crawl. [Tr. 381]. He also indicated that the Plaintiff's ability to reach, handle, feel, push/pull, and see would be affected by her impairments, and he recommended a number of environmental restrictions. [Tr. 382]. Dr. McMillin was provided with definitions of the statutory work levels, and he selected the box for "Patient Cannot Perform Sedentary Work." [Tr. 384].

> The ALJ explained the weight afforded to Dr. McMillin's opinion by stating:
>
>> The medical evidence reveals that family physician Dr. McMillin has provided care for the claimant's complaints of colds, coughs, runny nose, bronchitis, and neuropathic burning in her feet. The physician has prescribed B6 shots, Gabapentin, Neurontin, and Lortab for her foot pain. An office visit in August 2008 showed that the claimant reported improvement of her burning foot pain with use of no more than two daily Neurontin and Lortab.

[Tr. 19].

The Commissioner proffers many reasons in his brief why the findings and opinion from Dr. McMillin found in the Medical Assessment should not be credited. The ALJ, however, did not state, in his opinion, any of these reasons as grounds for discrediting Dr. McMillin's opinion. It may be, as the Commissioner has proffered, that Dr. McMillin's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record. However, the ALJ did not make this finding in his decision. He did not give "good reasons" for not crediting these findings, many of which are inconsistent with the ALJ's conclusion that the Plaintiff was capable of a limited range of light work.

The undersigned finds that the ALJ did not comply with the treating physician rule and, therefore, finds that the Plaintiff's allegation of error on this point is well-taken.

10

*2. Consulting Medical Sources*

The Plaintiff also argues that the ALJ erred in the weight he afforded to the opinions of Jeffery Summers, M.D., Denise Bell, M.D., Candace Blake, Psy.D., and Rebecca Joslin, Ed.D.

In regards to Dr. Summers, the Plaintiff argues that the ALJ did not give appropriate weight to Dr. Summer's finding that it would be "reasonable to expect that [the Plaintiff] will have difficulty grasping, fingering, feeling and manipulating objects on a repetitive basis with her hands," and his finding that her ability to finger objects would be limited, [Tr. 287, 291].[3] In addition, Dr. Summers found that Plaintiff "maintain[ed] gross functional use of her hands and the ability to perform all other work related activities in this regard." [Tr. 287].

The ALJ discussed Dr. Summers's opinion at length [Tr. 19], and the ALJ incorporated many of his findings into the residual functional capacity determination, [Tr. 17]. In regards to the grasping and fingering limitation the ALJ specifically noted, "Due to the claimant's mild decrease in gripping ability, Dr. Summers observed that the claimant was limited in repetitive grasping, fingering, feeling, and manipulating objects but maintained gross functional use of her bilateral hands and was capable of operating hand/foot controls for 8-hours total in an 8-hour workday." [Tr. 19].

The ALJ considered both the grasping and finger limitation and the finding that the Plaintiff maintained gross functional use of her hands. Dr. Summers's findings taken as a whole are not inconsistent with the ALJ's conclusion that the Plaintiff can perform light work, which may require "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The Court finds this allegation of error is not well-taken.

---

[3] The Plaintiff notes that these restrictions are similar to a finding by Denise Bell, M.D., on July 9, 2007. [Doc. 14 at 15].

11

The Plaintiff also notes, "A consultative psychological examination was performed by Candace Blake, Psy. D., on March 25, 2009. Dr. Blake stated in her report that 'Social interaction is markedly limited.'" This paragraph appears to be intended as an argument, but its lack of development would support a finding that it is waived. Nonetheless, the Court has reviewed Dr. Blake's finding [Tr. 323], the ALJ's treatment of Dr. Blake's opinion [Tr. 19], and the residual functional capacity which included a finding that the Plaintiff should avoid "frequent changes in the workplace," [Tr. 17].

The Plaintiff makes a similarly brief remark regarding the ALJ's treatment of the findings of Rebecca P. Joslin, Ed.D. On July 4, 2007, Dr. Joslin completed a series of short answer questions indicating that the Plaintiff would have marked limitations in interacting with the general public, but she would have no limitation in her ability to ask simple questions and requesting assistance, accepting instructions, maintaining socially appropriate behavior. [Tr. 519]. Dr. Joslin indicated the Plaintiff would be only moderately limited in her ability to interact with co-workers without distracting them. [Tr. 519].

The Plaintiff's own testimony that she worked at the Smoke Shop as a clerk for two years [Tr. 612], undermines the severity of any restriction Dr. Blake or Dr. Joslin place on Plaintiff's ability to interact socially. The ALJ found that the Plaintiff's credibility on this point and the reliability of Dr. Blake's findings in this regard were lacking [Tr. 19]. The ALJ's credibility finding is entitled to substantial deference, see White v. Comm'r of Soc. Sec., 572 F.3d 272, 288 (6th Cir. 2009), and Dr. Blake herself recognized that the Plaintiff was likely exaggerating her anxiety impairments, [see Tr. 323]. Moreover, the jobs that the ALJ found the Plaintiff could perform – a marker, sorter, table worker, fabricator, or textile folder – have not been shown to require frequent social interaction. The Court finds that the Plaintiff's remarks about the ALJ's

12

treatment of these opinions, to the extent they constitute allegations of error, are not well-taken.

## B.     The ALJ's Characterization of the Plaintiff's Daily Activities

The Plaintiff next argues that the ALJ erred in his description of the Plaintiff's activities of daily living. The Plaintiff maintains that the ALJ's characterization of the Plaintiff's daily activities "ignores the actual evidence in the record, and therefore, is arbitrary." [Doc. 14 at 17]. The Commissioner maintains that the ALJ did not err in evaluating the Plaintiff's activities of daily life, and he argues that the Court should give the ALJ's credibility assessment appropriate deference. [Doc. 23 at 15].

In his decision, the ALJ observed, "The claimant cares for personal needs; prepares simple meals; grocery shops; does the laundry; dusts the furniture; performs light household chores; reads the newspaper and the Bible; and enjoys watching movies and television." [Tr. 20, see also Tr. 16]. He explained, "Her ability to perform such a variety of daily activities tends to negate the credibility of her subjective complaints, especially the degree of pain she maintained she experiences." [Tr. 20].

As noted above, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citing Villarreal v. Sec'y of Health and Human Servs., 818 F.2d 461, 463 (6th Cir. 1987)).

In this case, the Plaintiff argues that the ALJ misconstrued statements by the Plaintiff and summaries found in medical notes from Dr. Blake and other sources. The Plaintiff notes that Dr. Blake's report commented, "She lives with her friend who primarily takes care of the house work. She might do a little housework such as dusting the bedroom. They eat with plastic

13

silverware and paper plates. She said she tries to wash the dishes but they do not come clean." [Tr. 322]. The Plaintiff also complains that there is no indication that the Plaintiff used public transportation, as noted by the ALJ in his decision.

At the hearing held July 28, 2008, the ALJ questioned the Plaintiff extensively about her daily activities. The Plaintiff testified, *inter alia*, that: she drove about twice a week, [Tr. 611]; she shops once per month when she gets her food stamps, [Tr. 616]; she can feather dust but not for "hours and hours," [Tr. 616]; she can cook if her friend is there to help her [Tr. 616]; they eat off throw-away dishes [Tr. 616]; she does laundry, [Tr. 616]; and she spends most of her day watching television, [Tr. 618].

Following an examination of the Plaintiff on March 25, 2009, Dr. Blake described her daily activities as follows:

> She lives with her friend who primarily takes care of the house work. She might do a little house work such as dusting the bed room. They eat with plastic silverware and paper plates. She said she tries to wash the dishes, but they do not come clean. I think this is another example of her irrational fears that the dishes are not clean enough. She watches TV. She does concentrate enough to watch a movie. She likes to sit and watch the birds or watch the creek go by. She walks up and down and does range of motion exercises. She likes to read the [B]ible or the newspaper although at times she has to read it over and over again. She does not cook much although she does do her own grocery shopping and her own laundry. She has been told by a social security judge related to her epilepsy that she should not drive, so she has to borrow a vehicle and a friend brought her today. She does not drive to the grocery store.

[Tr. 322]. Dr. Blake also noted in her report that she felt the Plaintiff exaggerated her symptoms "to some degree." [Tr. 322].

The Court finds the Plaintiff's testimony and the activities she reported to Dr. Blake are accurately portrayed, in combination, in the ALJ's assessment, and they provide substantial

14

evidence supporting the ALJ's description of her daily activities and his finding regarding credibility.

The Plaintiff's argument that the ALJ erred by finding the Plaintiff is "capable of utilizing public transportation" is not well-taken. The ALJ did not state that the Plaintiff used public transportation. He instead stated that the Plaintiff was capable of doing so and cited Dr. Summers's finding that the Plaintiff could do so in support of this statement, [Tr. 16 citing Exhibit B312, found at Tr. 294].

Based on the foregoing, the undersigned finds that the Plaintiff's allegation that the ALJ erred in his characterization of the Plaintiff's daily activities and his credibility finding are not well-taken.

C.   **The Vocational Expert Testimony**

The Plaintiff also argues that the vocational expert's testimony that jobs, which the Plaintiff could perform, exist in the economy "was based on an erroneous and incomplete hypothetical question posed by the ALJ." [Doc. 14 at 17]. The Plaintiff argues that the ALJ's question to the vocational expert, which did not include a restriction of occasional fingering and feeling, was not supported by substantial evidence. [Doc. 14 at 7].

The Commissioner responds that the hypothetical was appropriate and points out that the Plaintiff is essentially re-arguing her allegation that the ALJ erred in his treatment of the medical evidence regarding the fingering and feeling restriction. [Doc. 23 at 16].

A hypothetical to a vocational expert must include only those limitations that the ALJ finds to be credible. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). As the Court of Appeals for the Sixth Circuit has noted, the ALJ typically poses a hypothetical question incorporating a claimant's residual functional capacity to a vocational expert, and asks

15

how many jobs, if any, the claimant can perform. Poe v. Comm'r of Soc. Sec., 342 Fed. App'x 149, 157 (6th Cir. 2009).

In this case, the ALJ found that the Plaintiff's residual functional capacity included the ability to perform light work as defined in 20 CFR 416.967(b), with preclusions from: all climbing of ladders, ropes, or scaffolds; exposure to unprotected heights; and dangerous and moving machinery, including driving a car. The ALJ also limited the Plaintiff to simple, repetitive, non-detailed tasks, where she could avoid frequent changes in the workplace. The ALJ incorporated this residual functional capacity finding into a hypothetical that he posed to Joanne Bullard, a vocational expert. [Tr. 655]. She responded that with those limitations jobs that the Plaintiff could perform existed in the national and local economies. [Tr. 655].

The Court will not address the allegation that the ALJ erred by not incorporating a grasping and fingering restriction in the residual functional capacity finding a second time. The Court finds that the Plaintiff's allegation that the ALJ erred by not including a grasping, feeling, and/or finger restriction in his hypothetical to the vocational expert is not well-taken.[4]

**D.     The Lay Witness Testimony**

Finally, the Plaintiff argues that the ALJ erred in discounting the testimony of Sherri Hill, the Plaintiff's former co-worker, and Joni Hampton, the Plaintiff's cousin. [Doc. 14 at 18]. The Plaintiff contends that the ALJ based his decision to discount this testimony on an "assumption," despite the fact that the testimony was supported by other evidence in the record. [Doc. 14 at 19].

---

[4] The Court has, however, found that the ALJ erred by not giving reasons for discrediting the Medical Assessment completed by Dr. McMillian. Thus, the hypothetical *may* be modified on remand based upon any new or additional restrictions found following evaluation of the Medical Assessment.

16

The Commissioner maintains that the ALJ did not err in this respect and argues that the medical evidence in the record fails to support the degree of limitation indicated by the testimony of these witnesses. [Doc. 23 at 17].

At the hearing held November 19, 2009, Ms. Hill testified that she was the Plaintiff's supervisor when she worked at the Smoke Shop, in Harriman, Tennessee. Ms. Hill testified that the Plaintiff would drop things and would get anxious when the store was busy or she had to count money. [Tr. 640]. Ms. Hill testified that she would observe the Plaintiff having nervous episodes two to three times per day. [Tr. 641]. Ms. Hill described the episodes as involving shaking, sweating, and crying. [Tr. 641].

In an undated letter, the Plaintiff's cousin Joni Hampton wrote that the Plaintiff used to be an outgoing person who "would be the first person out of the car to go inside a store, or to just say hi to someone she knew." [Tr. 135]. Ms. Hampton explained that it is now hard to coax the Plaintiff to go out, and if she goes, she is shaky and will panic. [Tr. 135]. Ms. Hampton stated that she speaks to or sees the Plaintiff daily and "sometimes [the Plaintiff] just crys [sic]." [Tr. 136]. Ms. Hampton closed her letter by remarking, "She really need[s] this help." [Tr. 136].

The ALJ summarized these submissions and the weight afforded to them as follows:

> Joni Hampton, cousin of the claimant, provided a letter on behalf of the claimant and maintained that the claimant's mental status has dramatically deteriorated during the last few months such that the claimant only infrequently left home due to problems with panic attacks and frequent crying spells. Ms. Hampton averred that the claimant was shaky and panicky and tended to avoid people, even those that she knew.
>
> Ms. Sherri Hill, former coworker and manager of the claimant, testified on behalf of the claimant. She said that the claimant was a cashier and clerk stocker at The Smoke Shop for a period of about eight months in 2003. Ms. Hill said that the claimant appeared to

17

> have limited mobility when she stocked shelves. She stated that she observed the claimant for four to six hours daily and said the claimant suffered from anxiety attacks and was frequently tearful, shaky, and sweaty. She noted that she appeared short of breath and became nervous when she had to close out and tended to count and recount the money although the amount was correct the first time.

[Tr. 18].

The ALJ found that the claimant's medically determinable impairments could reasonably be expected to cause some of the Plaintiff's alleged symptoms but not to the degree of intensity and persistence alleged. [Tr. 18-19]. After reviewing the medical evidence supporting this conclusion, the ALJ further explained, "The undersigned also acknowledges the statements of claimant's cousin and her coworker regarding her significant mental difficulties due to anxiety and panic attacks but is of the opinion that the claimant's coworker and cousin might be over-emphasizing her mental limitations in an effort to further her attempts to obtain disability benefits." [Tr. 20]. In support of this decision to discount, the ALJ cited the Plaintiff's activities of daily life [Tr. 20], in conjunction with the medical findings of Dr. Blake [Tr. 19].

The Plaintiff cites the Court to Lashley v. Secretary of Health and Human Services, 708 F.2d 1048 (6th Cir. 1983), for the proposition that "[p]erceptible weight must be given to the testimony of lay witnesses where it is consistent with medical evidence." [Doc. 14 at 19]. In Lashley, the Court of Appeals actually held that "[p]erceptible weight must be given to lay testimony where . . . it is *fully supported* by the reports of the *treating physicians*." 708 F.2d at 1054 (emphasis added). The Plaintiff has not directed the Court to any report of a treating physician that fully supports the testimony of Ms. Hill and the letter submitted by Ms. Hampton. The Court finds that the ALJ did not fail to comply with the Court of Appeals' direction in Lashley; he did not err by failing to afford weight to Ms. Hill and Ms. Hampton's submissions,

18

see Hunsaker v. Barnhart, 2005 WL 3271485, at *10 (W.D. Va. Dec. 2, 2005) (finding no error where the ALJ disregarded statements by lay witness that were not necessary to the ALJ's decision and not supported by medical records).

Moreover, the ALJ discussed his reasons for discounting the testimony of Ms. Hill and the letter submitted by Ms. Hampton. The parties have not cited the Court to any case from the Court of Appeals for the Sixth Circuit discussing the requisite level of discussion an ALJ must afford lay testimony, nor has the Court found a case on point. A review of cases from other circuits, however, reveals that, at most, a ALJ must discuss the reason for discounting the testimony. See Witte v. Astrue, 2009 WL 2983057, at *10 (S.D. Ohio Sept. 14, 2009) (endorsing Ninth Circuit view that ALJ's failure to set forth reasons discounting lay witness testimony is erroneous); contra Orcutt v. Barnhart, 2005 WL 2387702, at *10 (C.D. Cal. Sept. 27, 2005) ("While lay witness testimony should generally not be ignored without comment, an ALJ's failure to explain his rejection of such testimony constitutes harmless error when that testimony does little more than corroborate plaintiff's testimony and adds nothing of substance to the record"). The ALJ in this case discussed the testimony of Ms. Hill and the letter submitted by Ms. Hampton and gave reasons for discounting their submissions, and the Court finds that he did not err in this regard.

## VI. CONCLUSION

Consistent with the above findings, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **GRANTED IN PART** and **DENIED IN PART** and that the Commissioner's Motion for Summary Judgment **[Doc. 22]** be **GRANTED IN PART and DENIED IN PART**.

The undersigned finds the Plaintiff's allegation that the ALJ erred in his treatment of the Medical Assessment completed by Dr. McMillian to be well-taken. The undersigned finds all other allegations of error are not well-taken. Therefore, it is **RECOMMENDED** that this case be **REMANDED** to the ALJ for consideration of the Medical Assessment and appropriate findings under 20 C.F.R.§§ 404.1527(d)(2) and/or 416.927(d)(2).

                                            Respectfully submitted,

                                            s/ C. Clifford Shirley, Jr.
                                            United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).